Adam R. Pechtel / WSBA #43743
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Telephone: (509) 586-3091

Attorney for Plaintiffs

United States District Court
Eastern District of Washington
Before the Hon. Salvador Mendoza, Jr.

| | |
|---|---|
| REGINALD BLAIR, CRYSTAL BEAN, and PETER SHARP,<br><br>                          Plaintiff,<br><br>v.<br><br>SOAP LAKE NATURAL SPA & RESORT LLC, and SHERRY XIAO,<br><br>                          Defendant. | No. 2:19-CV-00083-SMJ<br><br>First Amended Complaint & Jury Demand |

Being the victim of unlawful and unjust employment practices, Plaintiffs Blair, Bean, and Sharp allege the following facts and assert the following claims:

First Amended Complaint - 1

**A.    Parties**

1.      Plaintiff Reginald "Nick" Blair (hereinafter Plaintiff Blair) is a natural person.

2.      Plaintiff Crystal Bean (hereinafter Plaintiff Bean) is a natural person.

3.      Plaintiff Peter Sharp (hereinafter Plaintiff Sharp) is a natural person.

4.      Defendant Soap Lake Natural Spa & Resort LLC (hereinafter Defendant Soap Lake Spa) is a limited liability company organized under the laws of the State of Washington.

5.      Defendant Sherry Xiao (hereinafter Defendant Xiao) is a natural person.

**B.    Jurisdiction & Venue**

6.      Plaintiffs' fifth, seventh, ninth and eleventh claims arise under the laws of the United States, to wit: 29 U.S.C. § 207, 42 U.S.C. § 2000e-2, 42 U.S.C. § 2000e-3. This Court has subject matter jurisdiction over those claims by virtue of 28 U.S.C. § 1331.

7.      Plaintiffs' first, second, third, fourth, sixth, eights, tenth and twelfth claims are so related to Plaintiffs' fifth, seventh,

First Amended Complaint - 2

ninth and eleventh claims that they form part of the same case or controversy under Article II of the United States Constitution. This Court has subject matter jurisdiction over those claims by virtue of 28 U.S.C. § 1367.

8.     A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Grant County, Washington which is in the judicial district of the Eastern District of Washington. This Court is a proper venue of this action by virtue of 28 U.S.C. § 1391(b)(2).

**C.     Statement of Facts**

9.     Defendant Soap Lake Spa is in the business of operating a hotel and restaurant in Soap Lake, Washington.

10.     Until December 2017, Defendant Soap Lake Spa operated the restaurant under the registered trade name "Don's Restaurant."

11.     Defendant Soap Lake Spa did not operate the restaurant from January 2018 to May 2018.

12.     In May 2018, Defendant Soap Lake Spa reopened the restaurant under the registered trade name "Don's Lakeside Bistro."

First Amended Complaint - 3

13.     Defendant Soap Lake Spa also operates under the registered tradename Soap Lake Resort.

14.     On information and belief, Defendant Xiao is an owner of Defendant Soap Lake Spa.

15.     On information and belief, Defendant Soap Lake Spa employed fifteen or more employees on each working day in each of twenty or more calendar weeks in either 2017 or 2018 or both.

16.     Defendant Soap Lake Spa's established pay period was every 14 days; the established pay day was every other Friday.

**Plaintiff Bean**

17.     On about July 19, 2017, Defendant Soap Lake Spa offered to hire Plaintiff Bean as a server at Don's Restaurant earning $11.00 per hour. Plaintiff Bean accepted this offer of employment.

18.     In November and December 2017, Plaintiff Bean operated Don's Restaurant with only one other employee, Mindy Fulkerson.

19.     About January 1, 2018, Defendant Xiao claimed Plaintiff Bean "was doing a horrible job" and closed Don's Restaurant.

First Amended Complaint - 4

20.     Defendant Xiao planned to rename the restaurant Don's Lakeside Bistro and reopen it on May 7, 2018.

21.     Defendant Xiao transferred Plaintiff Bean to hotel front clerk. Plaintiff Bean was to earn $12.00 per hour and was initially scheduled for twenty hours per week.

22.     Azad (last name unknown) was the hotel manager during that time. He resigned in late February 2018.

23.     Plaintiff Bean began working more and more hours after Azad resigned. This included answering business related phone calls at all hours of the day and night.

**Plaintiff Blair**

24.     In February 2018, Plaintiff Blair was working in Montana at Fairmont Hot Springs Resort.

25.     He saw Defendant Soap Lake Spa's advertisement on Craigslist looking to hire a food and beverage manager and executive chef.

26.     Plaintiff Blair responded to the advertisement.

27.     Defendant Xiao and Plaintiff Blair spoke by video call (i.e. Skype). Defendant Xiao invited Plaintiff Blair and his wife to visit Defendant Soap Lake Spa.

First Amended Complaint - 5

28.    Plaintiff Blair visited Defendant Soap Lake Spa on two separate occasions.

29.    Plaintiff Blair declined the job on two occasions because the offered compensation was inadequate. Defendant Xiao continued to recruit Plaintiff Blair even after he declined the job twice.

30.    In February 2018, Defendant Xiao offered to hire Plaintiff Blair as the food and beverage manager and executive chef with a starting salary of $65,000 per year.

31.    Defendant Xiao also offered to pay Plaintiff Blair's rent in addition to his salary if he relocated to Soap Lake, Washington.

32.    During the negotiations, Plaintiff Blair informed Defendant Xiao that he was Jewish and that he would be requesting religious holidays off from work.

33.    Defendant Xiao said that it would be fine and said "whatever you need" or words to that effect.

34.    Plaintiff Blair was earning about $60,000 per year at Fairmont Hot Springs Resort.

35.    Plaintiff Blair was paying $800 per month in rent at that time.

First Amended Complaint - 6

1

2

36. Plaintiff Blair accepted the offer of employment and relocated to Soap Lake, Washington.

3

4

37. Plaintiff Blair's first day of work was on about March 1, 2018.

5

6

7

38. After Plaintiff Blair relocated to Soap Lake, Washington, Defendant Soap Lake Spa deducted $1,600 per month from Plaintiff Blair's wages to pay for his rent.

8

39. Plaintiff Blair celebrates Passover as a religious holiday.

9

10

40. In 2018, Passover began on March 30th and ended on April 7th.

11

12

13

41. Before the holiday, Plaintiff Blair asked Defendant Xiao for April 6th and April 7th off of work to celebrate Passover. Defendant Xiao agreed.

14

42. On April 6th, Plaintiff Blair did not go to work.

15

43. Defendant Xiao was angry about this.

16

17

18

19

44. She texted Plaintiff Blair in a group text with Plaintiff Sharp and Plaintiff Bean. She asked why Plaintiff Blair was not at work. Plaintiff Sharp and/or Plaintiff Bean reminded her that Plaintiff Blair had requested the day off.

20

45.     She replied that she was disappointed that Plaintiff Blair was not there and that he should have been working seven days a weeks because the restaurant was getting close to reopening.

### Plaintiff Sharp

46.     Defendant Xiao interviewed Plaintiff Sharp by phone in February 2018 for the position of hotel manager and director of marketing. They discussed Plaintiff Sharp's work experience and skill set. Defendant Xiao described the duties and responsibilities of the position.

47.     They exchanged several more phone calls over the following few weeks discussing the job, Plaintiff Sharp's relocation to Soap Lake, Washington, his start date, and his staring pay rate.

48.     Defendant Xiao told Plaintiff Sharp his job duties would be advertising and marketing the resort and restaurant and occasionally building special projects using his carpentry and woodworking skills.

49.     Defendant Xiao offered Plaintiff Sharp a bonus for each building project he completed.

First Amended Complaint - 8

50.    They discussed his starting salary and agreed on $48,000 per year; a non-taxable rent allowance of $900 per month; a gas allowance; and a phone allowance.

51.    Defendant Xiao told Plaintiff Sharp she would evaluate his work performance after thirty days and if he continued employment, he would receive a raise to include profit-sharing of ten percent in the restaurant and hotel.

52.    Plaintiff Sharp told Defendant Xiao that he would be travelling to Malaysia for fourteen days beginning on about April 9, 2018. The purpose of the trip was for Plaintiff Sharp to visit his wife and three children and return with them to the United States. Defendant Xiao acknowledged the trip and said "That would be wonderful, absolutely, whatever we need to do to make you and them happy" or words to that effect.

53.    Plaintiff Sharp told Defendant Xiao that he could not start work until May 2018 because he would be receiving a $5,000 bonus in May 2018 from his then-employer, GDM Management.

54.    Defendant Xiao wanted Plaintiff Sharp to begin working for Defendant Soap Lake Spa as soon as possible. She offered

First Amended Complaint - 9

to pay him the $5,000 bonus if he quit his job at GDM Management and began working for Defendant Soap Lake Spa.

55.     Relying on Defendant Xiao's promise to repay the bonus, Plaintiff Sharp accepted Defendant Xiao's offer of employment as hotel manager and marketing director under these terms on about March 1, 2018. He gave his two-week notice to his GDM Management.

56.     Plaintiff Sharp's first day of work with Defendant Soap Lake Spa was on about March 17, 2018.

57.     Defendant Xiao tasked Plaintiff Sharp with renovating the restaurant before it reopened on May 7, 2018.

58.     On one occasion, she asked Plaintiff Sharp to build tables for the restaurant.

59.     The majority of Plaintiff Sharp's work was construction related. He spent less than a quarter of his time doing marketing and advertising and less than a quarter of his time helping in the restaurant.

60.     When the date of Plaintiff Sharp's departure to Malaysia was nearing, Plaintiff Sharp reminded Defendant Xiao about the trip. She refused to let him go on the scheduled date.

Plaintiff Sharp had to change his round-trip ticket and his wife and children's one-way tickets.

61.    Plaintiff Sharp departed for Malyasia on about April 14, 2018 and returned with his family on about April 17, 2018. He missed three days of work.

62.    Other than those three days of work, Plaintiff Sharp worked seven days a week, 15 to 18 hours per day from March 17, 2018 to June 27, 2018.

63.    Defendant Soap Lake Spa hired Nita Albin as front house manager for the restaurant in about April 2018.

64.    Plaintiff Sharp's job title was changed from hotel manager to director of operations in April 2018. His duties continued to be predominantly construction and maintenance with little to no marketing or advertising.

**Spiros Michailidis**

65.    Spiros Michailidis was hired as hotel manager on about April 29, 2018.

66.    Spiros Michailidis treated ethnic Greek and Russian customers more favorably than non-Greek and Russian

First Amended Complaint - 11

customers. He would give them hotel discounts, he would not ridicule them, or be condescending or rude toward them.

67.     Nita Albin resigned in May 2018, about one week after Spiros Michailidis started working and before the restaurant reopened.

68.     After Nita Albin resigned, Defendant Soap Lake Spa promoted Plaintiff Bean to front house manager. Her compensation was changed to a salary of $2,500 per month.

69.     Spiros Michailidis would often refer to American's as "dumb Americans" and to persons with a Chinese national origin as "stupid Chinese."

70.     Plaintiff Sharp's wife was of Chinese national origin.

71.     In May 2018, Sammis Group held a dinner party at Don's Lakeside Bistro.

72.     Spiros Michailidis said "I fucking hate this Jewish cunt" about a member of the dinner party.

73.     Plaintiff Blair heard Spiros Michailidis say this.

74.     Plaintiff Blair told Spiros Michailidis "I'm Jewish as well." Spiros Michailidis replied in disrespectful tone "I have many

1
2

gods; you have one." This incident caused Plaintiff Blair to feel embarrassed and angry.

3
4
5
6
7

75.    Later on another occasion, Plaintiff Blair was wearing his yarmulke. Spiros Michailidis saw this and asked why Plaintiff Blair did not wear a full hat. Plaintiff Blair responded that the yarmulke was part of his religion. This incident caused Plaintiff Blair to feel like he was being attacked.

8
9
10
11
12
13
14
15

76.    Later on yet another occasion, Plaintiff Sharp, Plaintiff Blair, and Spiros Michailidis were in the hotel office. A Coca-Cola vendor came in and delivered an invoice. Spiros Michailidis paid the vendor and said "You know, if I was a Jew I wouldn't give you the seventy-five cents." He looked at Plaintiff Blair, and asked "Would you?" This caused Plaintiff Blair to be very mad. Plaintiff Blair told Plaintiff Sharp that they could finish their conversation later and left the office.

16
17
18
19
20

77.    On many occasions after Spiros Michailidis learned Plaintiff Blair was Jewish, Spiros Michailidis would come into the restaurant (Plaintiff Blair's area of responsibility) and yell at the waitresses right in front of customers and demand the

kitchen staff cook him and his family food before customers even when the restaurant was full.

78.     On yet another occasion, Spiros Michailidis falsely told Defendant Xiao that Plaintiff Blair was stealing from her.

79.     On information and belief, Spiros Michailidis would unlock doors to the restaurant at night after Plaintiff Blair had made sure the doors were locked.

80.     On about June 16, 2018, Plaintiff Blair asked Defendant Xiao to honor their original agreement to pay housing in addition to his $65,000 annual salary.

81.     On about June 17, 2018, Defendant Xiao fired everyone in the restaurant and told them to go home. Then she said she was joking.

82.     On about June 23, 2018 Plaintiff Blair spoke with Defendant Xiao and the other owner. Plaintiff Blair complained about Spiros Michailidis' anti-Semitism and other discrimination. Defendant Xiao replied that she did not care about the discrimination as long as Spiros Michailidis was making her money.

83.     Generally, after the restaurant closed for the day, the restaurant front house manager would take the cash and receipts from the restaurant to the hotel manager for the deposit.

84.     After the restaurant closed on about January 25, 2018, Plaintiff Bean brought the restaurant cash and receipts to Spiros Michailidis. He told her there were two missing receipts. She found them, brought them to him, and left for the day.

85.     The following day, Spiros Michailidis told Plaintiff Bean there was $20 missing from the previous day's cash and receipts. Plaintiff Bean counted out the cash and receipts again and it was all there. He called her an "incompetent American" and began screaming at her. Plaintiff Bean left to open the restaurant.

86.     After the restaurant closed that day, Plaintiff Bean brought the restaurant cash and receipts to Spiros Michailidis again. He threw the money bag at her and yelled that he would not do the deposit anymore. Plaintiff Bean collected the money bag, locked it in the safe, and left for the day.

87.    Plaintiffs Blair, Bean and Sharp each a filed workplace rights complaint with the Department of Labor and Industries on June 21, 2018. These complaints were complaints for unpaid wages.

88.    Shortly before being fired, Plaintiffs Blair, Bean and Sharp each submitted an intake form to file a charge of discrimination with the Equal Employment Opportunity Commission and the Washington State Human Rights Commission.

89.    Defendant Soap Lake Spa discharged Plaintiffs Blair, Bean, and Sharp on about June 27, 2018.

**D.    Statement of Claim(s)**

**Claim I: Breach of Contract--Plaintiff Blair (WPI 300.02)**

90.    Defendant Soap Lake Spa entered into a contract with Plaintiff Blair.

91.    The terms of that contract included:

a. Defendant Soap Lake Spa agreed to pay Plaintiff Blair's rent in addition to his salary.

b. Defendant Soap Lake Spa agreed to reimburse Plaintiff Blair for the costs of relocation.

First Amended Complaint - 16

92.    Defendant Soap Lake Spa breached the contract by deducting Plaintiff Blair's rent from his biweekly paycheck and not reimbursing Plaintiff Blair for the costs of relocation.

93.    Plaintiff Blair was damaged as a result of Defendant Soap Lake Spa's breach.

**Claim II: Breach of Contract--Plaintiff Sharp (WPI 300.02)**

94.    Defendant Soap Lake Spa entered into a contract with Plaintiff Sharp.

95.    The terms of that contract included:

a. Defendant Soap Lake Spa agreed to pay Plaintiff Sharp a salary of $48,000 per year, a $900 per month non-taxable housing allowance, a gas allowance, and a phone allowance.

b. Defendant Soap Lake Spa agreed to let Plaintiff Sharp take a 14-day leave of absence to travel to Malaysia to spend time with his wife and three children and return with them to the United States starting on about April 9, 2018.

c. Defendant Soap Lake Spa agreed to pay Plaintiff Sharp $5,000 to begin working immediately.

1        d. Defendant Soap Lake Spa agreed to give ten-percent profit

2            sharing in the restaurant and hotel to Plaintiff Sharp after

3            thirty days employment.

4        e. Defendant Soap Lake Spa agreed to pay Plaintiff Sharp a

5            bonus for each special building project he completed.

6    96.    Defendant Soap Lake Spa breached the contract by:

7        a. Not paying Plaintiff Sharp a $900 per month non-taxable

8            housing allowance, a gas allowance, or a phone

9            allowance.

10       b. Not permitting Plaintiff Sharp to take the entire leave of

11           absence to Malaysia.

12       c. Not paying Plaintiff Sharp the $5,000 compensation to

13           begin work immediately.

14       d. Not giving Plaintiff Sharp any profit-sharing.

15       e. Not paying Plaintiff Sharp a bonus for any of the special

16           building projects he completed.

17   97.    Plaintiff Sharp was damaged as a result of Defendant

18       Soap Lake Spa's breach.

19

20

### Claim III: Willful Withholding of Wages Owed

98.     Defendant Soap Lake Spa was obligated by contract to pay wages to Plaintiffs Blair and Sharp.

99.     Defendant Xiao was an officer, vice principal or agent of Defendant Soap Lake Spa.

100.    Defendant Soap Lake Spa and Defendant Xiao willfully paid Plaintiffs Blair and Sharp a lower wage than Defendant Soap Lake Spa and Defendant Xiao were obligated by contract to pay them.

### Claim IV: Overtime—Plaintiff Sharp (RCW 49.46.130)

101.    While working for Defendant Soap Lake Spa, Plaintiff Sharp worked between 105 and 126 hours per week except for the six-day trip he took.

102.    Defendant Soap Lake Spa did not pay Plaintiff Sharp compensation of at least one and one-half times his regular rate for his employment in excess of forty hours per workweek.

### Claim V: Overtime—Plaintiff Sharp (29 U.S.C. § 207)

103.    While working for Defendant Soap Lake Spa, Plaintiff Sharp worked between 105 and 126 hours per week except for the six-day trip he took.

104.    Defendant Soap Lake Spa did not pay Plaintiff Sharp compensation of at least one and one-half times his regular rate for his employment in excess of forty hours per workweek.

105.    Defendant Soap Lake Spa suffered or permitted him to work the uncompensated overtime.

**Claim VI: Religious Harassment (RCW 49.60.180, WPI 330.23)**

106.    Plaintiff Blair was subject to language or conduct of a religious nature.

107.    This language or conduct was unwelcome in the sense that Plaintiff Blair regarded the conduct as undesirable and offensive, and did not solicit or incite it.

108.    This conduct or language was so offensive or pervasive that it altered the conditions of Plaintiff Blair's employment.

109.    A manager of Defendant Soap Lake Spa participated in the conduct or language.

110.    Defendant Soap Lake Spa's management knew, through complaints or other circumstances, of this conduct or language, and failed to take reasonably prompt and adequate corrective action reasonably designed to end it.

**Claim VII: Religious Harassment (42 U.S.C. § 2000e-2, 9th Cir. MMCJI 10.5)**

111.    Plaintiff Blair was subjected to slurs, insults, jokes or other verbal comments or physical contact or intimidation of a religious nature.

112.    The conduct was unwelcome.

113.    The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff Blair's employment and create a religiously abusive or hostile work environment.

114.    Plaintiff Blair perceived the working environment to be abusive or hostile.

115.    A reasonable person in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

**Claim VIII: National Origin Harassment (RCW 49.60.180, WPI 330.23)**

116.    Plaintiffs Blair, Bean, and Sharp were subjected to language or conduct that occurred because of their national origin, that is they were neither Greek nor Russian.

117.   The language or conduct was unwelcome in the sense that they regarded the conduct as undesirable and offensive, and did not solicit or incite it.

118.   The language or conduct was so offensive or pervasive that it changed the terms of their employment.

119.   Spiros Michailidis participated in the conduct or language.

120.   Spiros Michailidis was a manager of Defendant Soap Lake Spa.

121.   Defendant Xiao knew either through complaints or should have known because it was so pervasive about this conduct or language and Defendant Soap Lake Spa failed to take reasonably prompt and adequate corrective action designed to end it.

**Claim IX: National Origin Harassment (42 U.S.C. § 2000e-2, 9th Cir. MMCJI 10.5)**

122.   Plaintiffs Blair, Bean, and Sharp were subjected to conduct affecting their national origin.

123.   The conduct was unwelcome.

First Amended Complaint - 22

124.    The conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive or hostile work environment due to their national origin.

125.    Plaintiffs Blair, Bean, and Sharp perceived the working environment to be abusive or hostile.

126.    A reasonable person in Plaintiffs Blair, Bean, and Sharp circumstances would consider the working environment to be abusive or hostile.

**Claim X: Retaliation (RCW 49.60.210, WPI 330.05)**

127.    Plaintiff Blair was opposing what he reasonably believed to be discrimination on the basis of religion and national origin.

128.    A substantial factor in the decision to terminate was Plaintiff Blair's opposing what he reasonably believed to be discrimination or retaliation.

**Claim XI: Retaliation (42 U.S.C. § 2000e-3, 9th Cir. MMCJI 10.8)**

129.    Plaintiff Blair opposed an unlawful employment practice, that is religious discrimination.

First Amended Complaint - 23

130.    Defendant Soap Lake Spa and Defendant Xiao subjected Plaintiff Blair to an adverse employment action, that is termination.

131.    Plaintiff Blair was subjected to the adverse employment action because of his opposition to an unlawful employment practice.

**Claim XII: Wrongful Discharge in Violation of Public Policy (*Peiffer v. Pro-Cut Concrete Cutting and Breaking Inc.*, 431 P.3d 1018 (2018)**

132.    Plaintiffs Blair, Bean, and Sharp had a legal right or privilege to file and pursue a wage complaint with the Department of Labor and Industries pursuant to RCW 49.48.082 through RCW 49.48.086.

133.    A significant factor in the decision to discharge Plaintiffs Blair, Bean, and Sharp was their exercise of that legal right or privilege.

**Request for Relief**

Wherefore, the plaintiff requests the following relief:

134.    Expectation damages for Plaintiff Blair and Plaintiff Sharp's losses due to Defendants' breaches of contract in an amount to be proven at trial.

135.    Overtime premium for Plaintiff Sharp in the amount of $12,900.

136.    General damages for past and future emotional harm caused by the unlawful harassment and discharges, including but not limited emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish in an amount to be proven at trial.

137.    Special damages for past and future costs of medical treatment resulting from the unlawful harassment and discharges in an amount to be proven at trial.

138.    Special damages for lost past wages and fringe benefits with prejudgment interest and an additional sum to offset the increased tax liability of a lump sum payment in an amount to be proven at trial.

139.    Special damages for lost future wages and fringe benefits in lieu of reinstatement in an amount to be proven at trial.

140.    Punitive damages as authorized by the Americans with Disabilities Act in an amount to be proven at trial.

141.    Exemplary damages as authorized by Washington's Wage Rebate Act in an amount to be proven at trial.

142.    Statutory costs.

143.    Actual costs of suit.

144.    Reasonable attorneys' fees.

145.    Declaratory judgment that Defendant Soap Lake Spa and Defendant Xiao's acts, policies and procedures identified in this complaint violated Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. and the Washington Law Against Discrimination, RCW 49.60 et seq.

146.    Issuance of a permanent injunction enjoining Defendant Soap Lake Spa its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in employment practices that discriminate against persons on the basis of their religion or national origin in regard to the terms and conditions of employment.

147.    Order Defendant Soap Lake Spa and Defendant Xiao to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals regardless of their religion and national origin, and that

1    eradicate the effects of its past and present unlawful

2    employment practices.

3    148.    Such other and further relief as deemed just, lawful, and

4    equitable by the Court.

5    **E.    Jury Demand**

6    149.    Plaintiffs request their claims to be tried by a jury

7    pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment

8    to the United States Constitution.

9

10

11    Dated: June 3, 2019              Respectfully Submitted,

12                                     s/Adam R. Pechtel
                                       Adam R. Pechtel/ WSBA #43743
13                                     Attorney for Plaintiffs
                                       Pechtel Law PLLC
14                                     21 N Cascade St
                                       Kennewick, WA 99336
15                                     Telephone: (509) 586-3091
                                       Email: adam@pechtellaw.com
16

17

18

19

20

First Amended Complaint - 27

SERVICE CERTIFICATE

I certify that June 3, 2019, I electronically filed the foregoing with the District Court Clerk using the CM/ECF System, which will send notification of such filing to the following:


Jerry Moberg, Attorney for Defendants

James Baker, Attorney for Defendants


s/Adam R. Pechtel
Adam R. Pechtel/ WSBA #43743
Attorney for Plaintiffs
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Telephone: (509) 586-3091
Email: adam@pechtellaw.com

First Amended Complaint - 28