FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 07, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REGINALD BLAIR, CRYSTAL BEAN, and PETER SHARP,<br><br>     Plaintiffs,<br><br>  v.<br><br>SOAP LAKE NATURAL SPA & RESORT, LLC and SHERRY XIAO,<br><br>     Defendants. | No. 2:19-cv-00083-SMJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument,[1] is Defendants Soap Lake Natural Spa & Resort, LLC and Sherry Xiao's Motion for Summary Judgment, ECF No. 31. Plaintiffs Reginald Blair, Crystal Bean, and Peter Sharp brought suit against Defendants alleging that during their time working at the Soap Lake Resort, they were subjected to a hostile work environment, that Defendants willfully withheld their wages and refused to pay overtime, and that Plaintiffs were ultimately terminated for filing wage complaints with the State of Washington. For the reasons

---

[1] Though Defendants' motion was originally noted for hearing with oral argument, the Court finds oral argument unnecessary because, having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court is fully informed. *See* LCivR 7(i)(3)(B)(iii).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 1

that follow, the Court finds summary judgment is appropriate only on Plaintiffs'

hostile work environment claims, while genuine disputes of material fact preclude

summary judgment on their remaining claims.

## BACKGROUND

This case arises out of Plaintiffs' employment at the Soap Lake Resort (the

"Resort") in Grant County, Washington, owned and operated by Defendant Sherry

Xiao and her husband, Kevin Wen. *See* ECF No. 31 at 2–3. The Resort includes a

restaurant, a hotel, and a spa. ECF No. 1-1 at 6. Plaintiff Crystal Bean was hired at

the Resort in mid-2017, and during her time there worked as a server in the

restaurant and front-desk attendant in the hotel. *Id.* at 7. Plaintiff Reginald Blair was

hired as the Resort's food and beverage manager and executive chef in February

2018. *Id.* at 8. Plaintiff Peter Sharp began working as the hotel manager and director

of marketing in March 2018. *Id.* at 10–11. Each was given a termination letter on

June 27, 2018, allegedly for being "untrustworthy." *See* ECF No. 31 at 2.

On February 1, 2019, Plaintiffs sued Defendants in the Grant County,

Washington Superior Court. *See* ECF No. 1-1 at 4. Plaintiffs alleged numerous state

law claims including breach of contract, wage and hour violations, and illegal

discrimination. *See id.* at 16–19, 20–21. Plaintiff Blair also alleged religious

harassment under Title VII of the Civil Rights Act of 1984 and unlawful retaliation

under federal law. *Id.* at 19, 21 (citing 42 U.S.C. § 2003e-3).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 2

Defendants removed the suit to this Court, invoking federal question jurisdiction based on Plaintiff Blair's federal claims. ECF No. 1. Defendants filed an Answer and lodged six state-law counterclaims. *See* ECF No. 3 at 24–26. Plaintiffs subsequently filed a First Amended Complaint including additional federal causes of action. *See* ECF No. 10. Plaintiff Sharp alleged violations of federal law for Defendants' alleged failure to pay overtime, and each Plaintiff alleged Defendants engaged in national origin harassment under Title VII.[2] *Id.* at 19–20, 22–23 (citing 29 U.S.C. § 207; 42 U.S.C. § 2000e-2). On January 14, 2020, Defendants moved for summary judgment on all Plaintiffs' claims.

## LEGAL STANDARD

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence

---

[2] As noted below, in response to Defendants' motion for summary judgment, Plaintiffs Blair and Bean withdrew their claims under Title VII, and Plaintiff Blair withdrew his federal retaliation claim. *See* ECF No. 35 at 25. Defendants thereafter moved to dismiss Plaintiff Bean's remaining state law claims or, in the alternative, moved the Court to decline to exercise supplemental jurisdiction over those claims. ECF Nos. 50, 69. On April 13, 2020, the Court denied that motion, deciding to exercise supplemental jurisdiction over all Plaintiff Bean's claims. ECF No. 70.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 3

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.* Nevertheless, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires resolution by the finder of fact. *See Anderson*, 477 U.S. at 248–49.

**DISCUSSION**

**A.    Breach of Contract Claims**

Defendants first move for summary judgment on Plaintiff Blair's breach of contract claim under state law. ECF No. 31 at 4–5. Disputes over the terms of a contract are typically questions of fact on which summary judgment is rarely appropriate. *Atl. Pac. Corp. v. Associated Earth Scis., Inc.*, 112 Wash. App. 1044 (Wash. Ct. App. 2002) (citing *Sea–Van Invs. Assocs. v. Hamilton*, 881 P.2d 1035, 1038–39 (Wash. Ct. App. 1994); *Saluteen–Maschersky v. Countrywide Funding Corp.*, 22 P.3d 804, 807 (Wash. Ct. App. 2001)). This is particularly true for oral

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 4

contracts, where disputes necessarily require the finder of fact to evaluate the credibility of witnesses. *See Saluteen-Maschersky*, 22 P.3d at 807.

### 1. Summary Judgment is Inappropriate on Plaintiff Blair's Claim for Breach of Contract

Having reviewed the record and the parties' contentions, the Court finds a genuine dispute concerning the terms of Plaintiff Blair's employment contract with Defendants precludes summary judgment. Plaintiff Blair alleges that in recruiting him to work at the Resort, Defendant Xiao agreed to pay him $65,000 in addition to paying for the cost of his housing near the Resort. ECF No. 35 at 14–16; ECF No. 36-3 at 1–2. Defendants, by contrast, contend Plaintiff Blair's housing allowance was to be deducted from his bi-weekly paychecks and paid directly to his landlord. ECF No. 31 at 4–5. Defendants point to an email from Mr. Wen to Plaintiff Blair, with the subject line "[P]ay stub March 30," which appears to reflect an $800 deduction for Plaintiff's rent. ECF No. 32-6 at 52. Thus, Defendants contend, "Blair was paid everything that he was entitled to under his contract." *Id.* at 5. Plaintiff Blair does not appear to dispute the authenticity of the email but argues its characterization of his contract was "not accurate." ECF No. 36 at 24.

Because the parties' agreement was not recorded in a contemporaneous writing, Plaintiff Blair's allegation that Defendants breached that agreement will require the jury to assess the credibility of the parties' conflicting accounts of the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 5

contract's substance. And while the email from Mr. Wen clearly indicates Plaintiff Blair's housing allowance was to be deducted from his annual $65,000 salary, rather than paid in addition to it, the email itself indicates it is a "pay stub," rather than a contemporaneous memorialization of Plaintiff Blair's employment contract. ECF No. 32-6 at 52. Thus, while the email is evidence of the parties' agreement, it is not dispositive, and Plaintiff Blair submitted a sworn declaration disputing the agreement reflected in the email. *See* ECF No. 36-3 at 1. Accordingly, the Court finds a genuine dispute of material fact precludes summary judgment.[3]

### 2. Summary Judgment is Inappropriate on Plaintiff Sharp's Claim for Breach of Contract

Likewise, a genuine dispute of material fact exists with regard to Plaintiff Sharp's breach of contract claim. *See* ECF No. 35 at 16–17. Plaintiff Sharp contends, among other things, that Defendants orally agreed to pay him a $5000.00 bonus to begin work at the Soap Lake Resort immediately, in addition to a $1000.00 relocation fee. *See* Sharp Decl. ¶ 3–4. Defendants, by contrast, contend "[t]he declarations of Ms. Xiao and Mr. Wen demonstrate that Sharp was paid everything he was entitled to under his contract." ECF No. 31 at 21; *see also* ECF No. 32-5

---

[3] The Court also finds unpersuasive Defendants' argument that the rent-payment component of Plaintiff Blair's employment contract is void under Washington law because it was not memorialized in a signed writing. *See Duncan v. Alaska USA Fed. Credit Union, Inc.*, 199 P.3d 991, 1001 (2008) (holding contract for continuing performance of indefinite duration outside statute of frauds).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 6

at 5. Defendants fail to explain how their sworn declarations carry dispositive evidentiary weight where Plaintiff Sharp has submitted contrary evidence. Thus, as with Plaintiff Blair's claims, the dispute over Plaintiff Sharp's contract boils down to dueling versions of the truth appropriately reserved for the finder of fact. Accordingly, summary judgment is inappropriate.

**B.    Willful Wage Withholding**

Defendants next move for summary judgment on Plaintiffs Blair and Sharp's claims for willful withholding of wages under Washington law. ECF No. 31 at 5–6. Washington law provides that upon termination of an employment relationship, an employer must pay all wages to which the employee is entitled. Wash. Rev. Code § 49.48.010; *see also Durand v. HIMC Corp.*, 214 P.3d 189, 196 (Wash. Ct. App. 2009). An employee whose former employer willfully fails to pay such wages may recover, among other things, twice the amount of wages unlawfully withheld and attorney fees. Wash. Rev. Code § 49.52.070.

As one court in this district observed, "[t]he critical determination in these cases is whether non-payment is 'willful.'" *Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167, 1181 (E.D. Wash. 2016) (citing *Schilling v. Radio Holdings, Inc.*, 961 P.2d 371, 373–74 (Wash. 1998)). The withholding of wages does not qualify as willful if (1) it is attributable to "carelessness or inadvertence," or (2) there is a "bona fide dispute" over whether the wages are in fact owed. *Id.* "To

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 7

qualify as a 'bona fide' dispute, it must be 'fairly debatable' as to whether an employment relationship exists or whether the wages must be paid." *Id.* In the usual case, whether an employer's withholding of wages was willful will be a question reserved for the finder of fact, though where "reasonable minds could reach but one conclusion," judgment as a matter of law is appropriate. *Id.* (citing *Failla v. FixtureOne Corp.*, 336 P.3d 1112, 1118 (Wash. 2014)).

### 1. Summary Judgment is Inappropriate on Plaintiff Blair's Claim for Willful Withholding of Wages

Defendants argue summary judgment on Plaintiff Blair's wage withholding claim is appropriate because the record unambiguously establishes "Blair was paid all wages to which he was entitled," though they concede "[a]t most, there is a bona fide dispute." ECF No. 31 at 6. Plaintiff Blair argues that, as with his claim for breach of contract, there is a genuine dispute concerning whether Defendants agreed to pay his rent *in addition to* his base salary of $65,000 per year, or whether the agreement was that his rent payment would be deducted from his bi-weekly paychecks. ECF No. 35 at 23. He also contends that, if the jury finds Defendants agreed to pay his rent in addition to his salary, it will necessarily find the withholding of those wages was willful. *Id.*

The Court disagrees with both parties' assertions. As discussed above, there is sufficient evidence in the record to permit a rational juror to conclude Defendants

1   orally agreed to pay Plaintiff Blair's rent in addition to a $65,000 annual salary. The

2   Court also finds there is sufficient evidence from which a rational juror could find

3   this agreement unambiguously and objectively manifested, and Defendants'

4   subsequent failure to honor the agreement was willful. But those two conclusions

5   are not logically inseparable—that is, a jury could find *both* that the parties

6   objectively manifested a mutual understanding that Plaintiff Blair would be paid

7   $65,000 in addition to his rent *and* that, when Plaintiff Blair confronted Defendants,

8   there was a bona fide dispute as to that agreement. In short, the evidence cuts clearly

9   in neither direction and this claim is appropriately reserved for decision by the jury.

10  *See Busey*, 172 F. Supp. 3d at 1181.

11          **2.    Summary Judgment is Inappropriate on Plaintiff Sharp's Claim
                    for Willful Withholding of Wages**

12

13          Defendants also summarily argue that "the declarations of Mr. Wen and Ms.

14  Xiao establish that Sharp was paid all wages to which he was entitled" and that "[a]t

15  most, there is a bona fide dispute." ECF No. 31 at 21. Plaintiff Sharp disagrees,

16  arguing the evidence clearly establishes Defendants agreed to pay him a $5000.00

17  bonus to begin work immediately and a $1000.00 payment to assist in his relocation,

18  of which he contends Defendants still owe him $3500.00. ECF No. 35 at 24. He

19  also contends Defendants willfully misclassified him as overtime-exempt, and thus

20  willfully withheld the full quantum of his regular wages. *Id.* Like Plaintiff Blair,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 9

Plaintiff Sharp argues that if the jury credits his testimony about his oral agreement with Defendants, it must find Defendants willfully withheld his wages. *Id.*

The Court again disagrees with both parties. In short, there is sufficient evidence from which a rational juror could conclude *both* that Defendants agreed to pay Plaintiff Sharp as he alleges and that they improperly paid him as an overtime-exempt employee, yet also find there was a bona fide dispute on these points. This claim is therefore properly reserved for the finder of fact, and summary judgment is inappropriate. *See Busey*, 172 F. Supp. 3d at 1181.

## C.    Harassment and Discrimination

Defendants next seek summary judgment on Plaintiffs' claims, under state and federal law, that they were subjected to unlawful harassment and discrimination on the basis of religion and national origin. ECF No. 31 at 3. Specifically, Plaintiffs assert Spiros Michaelidis, who was hired at the Resort in May 2018 to "coach Sharp in hotel management and marketing and to prepare Profit and Loss reports," engaged in unlawful harassment and discrimination. *Id.* As a preliminary matter, Plaintiffs' hostile work environment claims have thinned somewhat since the Complaint was filed in the state court. In response to Defendants' motion for summary judgment, Plaintiff Bean withdrew her federal harassment claim and Plaintiff Blair withdrew his federal and state claims of discrimination based on national origin. ECF No. 35 at 25. Thus, what remain are Plaintiff Bean's claim of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 10

national origin discrimination under Washington law, Plaintiff Blair's claims of religious discrimination under both federal and state law, and Plaintiff Sharp's claim of national origin discrimination under both federal and state law. *See id.* at 25–31. Because the same standards govern each of these claims, the Court analyzes them together.

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of, as relevant here, religion or national origin. 42 U.S.C. § 2000e-2(a)(1); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To recover under Title VII, a plaintiff must show "(1) that she was subjected to verbal or physical conduct based on her [protected characteristic]; (2) that the conduct was unwelcome; and (3) that the conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005) (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)). Concerning the third element, a plaintiff must show the workplace was both objectively and subjectively hostile. *Id.* (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004)). To determine if a workplace is objectively hostile within the meaning of Title VII, courts consider the totality of the circumstances, namely the frequency, severity, and nature of the alleged harassment from the vantage of "'a reasonable person belonging to the racial or ethnic group of the plaintiff.'" *Id.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 11

1    (citing *Vasquez*, 349 F.3d at 642; *McGinest*, 360 F.3d at 1115).

2        Title VII is not a "general civility code" creating civil liability for "'the

3    ordinary tribulations of the workplace.'" *Faragher v. City of Boca Raton*, 524

4    U.S. 775, 788 (1998) (quoting B. Lindemann & D. Kadue, *Sexual Harassment in*

5    *Employment Law* 175 (1992)). Accordingly, "'simple teasing,' offhand comments,

6    and isolated incidents (unless extremely serious)" are insufficient to state a claim

7    under Title VII. *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523

8    U.S. 75, 81 (1998)). Thus, courts have held, in a variety of circumstances, that

9    allegedly discriminatory harassment is insufficient to create a triable Title VII issue.

10   *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (collecting cases)

11   (upholding summary judgment in favor of Defendant on Title VII claim premised

12   on jokes involving the phrase "China man" and co-workers "pull[ing] their eyes

13   back with their fingers in an attempt to imitate or mock the appearance of Asians").

14       Washington law independently prohibits harassment on the basis of religion

15   and national origin under a rubric similar to Title VII. *See Butler v. G4S Secure*

16   *Sols. (USA), Inc.*, Case No. 2:19-cv-194-RMP, ECF No. 26 at 15 (E.D. Wash.

17   Nov. 14, 2019). To state a claim for workplace harassment under Washington law,

18   a plaintiff must establish (1) she was subjected to unwelcome harassment, (2) the

19   harassment was due to the plaintiff's protected characteristic, (3) the harassment

20   was sufficiently severe to "affect[] the terms or conditions of [the plaintiff's]

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 12

employment," and (4) the harassment is imputed to the employer. *Glasgow v. Georgia-Pac. Corp.*, 693 P.2d 708, 711–12 (1985). Like under Title VII, "isolated or trivial manifestations of a discriminatory environment" are insufficient to state a cause of action under Washington law. *Id.*

Plaintiff Blair alleges he was subject to a hostile work environment because Michaelidis "belittled [his] Jewish faith." ECF No. 35 at 27. He points to an incident in which Michaelidis remarked, while serving a party from a Jewish-interest organization, that he "hate[d] 'fucking Jews'" and did not want to serve a female Jewish customer, invoking an offensive epithet. ECF No. 35 at 27 (citing ECF No. 36-4 at 17). Plaintiff Blair also alleges Michaelidis mocked his yarmulke and often invoked the stereotype of Jewish greed. *Id.* at 27–29. Plaintiff Blair testified that while Michaelidis initially treated him with respect, when Plaintiff Blair revealed his Jewish faith, Michaelidis began "yelling at [him], cussing at [him], and . . . treating [him] offensively." *Id.* (citing ECF No. 36-4 at 24).

Plaintiff Bean alleges Michaelidis created a hostile work environment by mocking her American heritage. ECF No. 35 at 30. Specifically, she testified Michaelidis called her a "dumb American." *See* ECF No. 38-2 at 13, 15, 24 & 26. She also testified Michaelidis "treat[ed] her poorly," describing the harassment as "a daily occurrence." *Id.* at 26. Plaintiff Sharp alleges Michaelidis made offensive comments about his German origins, referring to him as a "stupid kraut" and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 13

demanding control over all aspects of the Resort's management because he considered Greeks superior. ECF No. 35 at 30–31; ECF No. 36-7 at 9.

Accepting these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court finds Plaintiffs have failed to come forward with sufficient evidence for a rational juror to find they were subject to a sufficiently hostile work environment on the basis of their religion or national origin. Though Michaelidis's alleged comments are troubling, the Court finds each falls within the category of offhand comments or isolated incidents insufficient to create liability under Title VII or Washington law. *See Meritor*, 477 U.S. at 67 ("[M]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." (internal quotations omitted)); *see also Manatt*, 339 F.3d at 799; *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1107 (9th Cir. 2000) (finding no actionable harassment where employee referred to a woman as "madonna," "regina" and a "castrating bitch"). As such, judgment as a matter of law in favor of Defendants is appropriate.[4]

**D.    Wrongful Discharge in Violation of Public Policy**

Defendants next move for summary judgment on Plaintiffs' claims of

---

[4] Because the Court grants summary judgment in favor of Defendants on all Plaintiff's hostile work environment claims, it need not reach Defendant's argument concerning Defendant Xiao's personal liability under Title VII. ECF No. 31 at 6.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 14

wrongful discharge in violation of public policy. In Washington, as in many states, unless specified, an employment contract is terminable at will by either the employee or the employer. *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1084 (Wash. 1984). Even so, a Washington employer may not rely on the terminable at will doctrine to "shield [its] action which otherwise frustrates a clear manifestation of public policy." *Id.* at 1088. Accordingly, Washington recognizes the tort of wrongful discharge in violation of public policy. *Id.* at 1089.

Washington courts have consistently recognized that "smoking gun" evidence of retaliatory motive is rare because proof resides in the employer's mental processes and savvy employers "infrequently announce their bad motives orally or in writing." *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 445 (Wash. 2001), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464 (Wash. 2017) (citations omitted). Thus, to ensure plaintiffs are not unfairly denied their day in court, Washington courts utilize the burden-shifting framework announced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to "'compensate for the fact that direct evidence of intentional discrimination is hard to come by.'" *Hill*, 23 P.3d at 445 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989)).

//

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 15

Under this framework, the employee-plaintiff must first establish a *prima facie* case of retaliatory discharge, comprised of three elements:

> (1)[T]hat he or she exercised [a] statutory right . . . or communicated to the employer an intent to do so . . . ; (2) that he or she was discharged; and (3) that there is a causal connection between the exercise of the legal right and the discharge, *i.e.*, that the employer's motivation for the discharge was the employee's exercise of or intent to exercise the statutory rights.

*Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28–29 (1991). If the plaintiff succeeds at this first step, the burden shifts to the employer to "articulate a legitimate nonpretextual nonretaliatory reason for the discharge." *Id.* at 29. If the employer does so, the burden shifts back to the employee to demonstrate that the employer's proffered justification was pretextual or, even if it was legitimate, that the employer's retaliatory motive was a "substantial or important factor motivating the discharge." *Id.* at 29, 30.

Turning to the case at hand, the Court finds Plaintiffs have established a *prima facie* case of retaliatory discrimination after they filed wage complaints. First, Washington law affords employees a statutory right to seek full payment of the wages to which they are due, and at least one Washington court has recognized filing a wage complaint is an exercise of a statutory right protected by the tort of wrongful discharge in violation of public policy. *See* Wash. Rev. Code §§ 49.48.082(11), .083–.087; *Winter v. Toyota of Vancouver USA, Inc.*, 132 Wash.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 16

App. 1029 (Wash. Ct. App. 2006) ("Clearly, employers who retaliate against employees for asserting wage claims . . . are liable for the tort of wrongful discharge in violation of public policy.").

Second, there is no dispute that Plaintiffs Blair and Sharp were terminated. *See* ECF No. 32-5 at 16. Though Defendants dispute whether they terminated Plaintiff Bean, viewing the facts in the light most favorable to her, there is certainly evidence from which a rational juror could conclude she was, in fact, fired.[5] *See id.* ("Mr. Wen prepared a letter of termination for Ms. Bean."); ECF No. 36-1 at 5.

Third, the Court finds Plaintiffs have produced enough evidence to support the inference of a causal connection between their filing wage complaints and their subsequent terminations. Each Plaintiff filed a wage complaint with the Washington Department of Labor and Industries. ECF No. 36-1 at 4; ECF No. 36-3 at 5–6; ECF No. 36-6 at 12. The evidence demonstrates Defendant Xiao's husband was notified of these complaints four days later, on June 25, 2018, and the next day sent a text message to all Plaintiffs notifying them that, effective immediately, Michaelidis was in charge of all restaurant operations. *See* ECF No. 36-5 at 3–30.

//

//

---

[5] Notably, in moving for summary judgment, Defendants appear to concede Plaintiff Bean was, in fact, terminated. *See* ECF No. 31 at 2 ("After it was concluded that Blair, Bean and Sharp were untrustworthy, they were fired on June 27, 2018.").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 17

Also on June 26, 2018, Defendant Xiao sent the following text message to

Plaintiff Sharp:

> New jobs don't necessary work out, I offered everyone a solution to
> separate gracefully and keep damage to a minimum to both sides while
> still maintain friendship, but you totally take my kindness as weakness,
> to group up with Dustin against us and the business?
>
> We chose to fight our full legal rights to the end of it! You can turn all
> your keys, company property, business email password and resign now
> or the termination letter will be delivered by the end of the day! [sic]

ECF No. 36-6 at 14. During his deposition, Defendant Xiao's husband testified he

was aware Plaintiffs had filed wage complaints when he delivered them letters of

termination.[6] ECF No. 36-8 at 5 ("When we terminated them, I was aware.").

Under Washington law, a plaintiff may satisfy the causal element of a *prima

facie* showing of retaliatory discharge by demonstrating the employer's knowledge

of the protected activity together with "proximity in time between that activity and

the termination." *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 384 (Wash. Ct.

App. 2020) (citing *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 236–37 (Wash.

2018)). Thus, "[i]f the employer knows of the protected activity and the termination

follows 'shortly thereafter, it is a reasonable inference that these actions were in

---

[6] Defendants contend they "decided to fire Mr. Blair and Mr. Sharp" on June 25, 2018, before they were notified of Plaintiffs' wage complaints. *See* ECF No. 32 at 48. But they point to no objective evidence contemporaneous with this alleged decision, and Mr. Wen admitted he knew of the wage complaints at the time he gave Plaintiffs letters of termination.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 18

retaliation' for the activity." *Id.* (citing *Cornwell*, 430 P.3d at 236).

In this case, less than a week separated the filing of Plaintiffs' wage claims and their ultimate termination. This, paired with Plaintiffs' testimony concerning the atmosphere at the Resort, Defendant Xiao's and Mr. Wen's communications with Plaintiffs, and Mr. Wen's knowledge of the wage complaints at the time Plaintiffs were terminated, supports a reasonable inference that Plaintiffs' wage complaints played a substantial role in Defendants' decision to terminate them. The burden thus shifts to Defendants to proffer a nonretaliatory explanation for Plaintiffs' terminations. *Wilmot*, 821 P.2d at 28–29. Defendants maintain Plaintiffs Blair and Sharp were fired because they were untrustworthy and argue Plaintiff Bean was not terminated but rather quit. ECF No. 31 at 18, 20 & 27. If credited by the finder of fact, these explanations would suffice as nonretaliatory justifications for Plaintiffs' separation from the Resort.

Therefore, Plaintiffs bear the burden of establishing either that Defendant's explanations are pretextual or that, even if they are legitimate, Plaintiffs' filing wage complaints were substantial motivating factors in their respective terminations. *Wilmot*, 821 P.2d at 28–29. Plaintiffs dispute each of the proffered justifications included in their letters of termination. *See* ECF No. 35 at 9–13; ECF No, 36-1 at 5; ECF No. 36-3 at 5–8; ECF No. 36-6 at 9–15. Though the Court finds it unnecessary to catalog each of the ways in which Plaintiffs dispute Defendants' justifications,

the Court finds sufficient evidence from which a rational juror could conclude Defendants' explanations were pretextual or, to the extent they were legitimate, that Plaintiffs' filing wage claims was a substantial motivating factor in Defendants' decision to fire them. *Wilmot*, 821 P.2d at 28–29. As such, there are genuine disputes of material fact concerning Plaintiffs' claims for wrongful discharge in violation of public policy, and summary judgment is inappropriate.

**E.    Unpaid Overtime**

Finally, Defendants move for summary judgment on Plaintiff Sharp's claim that they improperly failed to pay him overtime. Under both federal and Washington law, an employer is obligated to pay a non-exempt employee one and one-half times his regular rate of pay for every hour in excess of forty hours worked in a given week. Wash. Rev. Code § 49.46.130(1); 29 U.S.C.§ 207(a)(1). Certain employees, including bona fide executive, administrative, or professional employees, are exempt from the overtime requirement. *See* 29 U.S.C. § 213(a)(1). Though a fact-specific inquiry, the test for whether an employee is an overtime-exempt executive employee typically turns on whether the employee's "primary duty is management of the enterprise in which the employee is employed." 29 C.F.R. § 541.100(a)(2); Wash. Admin. Code § 296-128-510(1). Similarly, the "primary duty" of a bona fide administrative employee is "the performance of office or non-manual field work directly related to management policies or general business operations of his

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 20

employer or his employer's customers." 29 C.F.R. § 541.200; Wash. Admin. Code § 296-128-520.

As an initial matter, Defendants contend Plaintiff Sharp's claim for unpaid overtime must fail because he lacks adequate records to substantiate the number of hours he allegedly worked without fair compensation. ECF No. 31 at 21. But as the Supreme Court long ago recognized, to penalize an employee simply because he lacks detailed evidence to support his claim of uncompensated overtime would "place a premium on an employer's failure to keep proper records in conformity with his statutory duty." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Thus in cases where an employee lacks detailed time logs, he may still recover unpaid overtime if he

> [P]roves that he has in fact performed work for which he was improperly compensated" and "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," [after which] the burden "shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." If the employer does not rebut the employee's evidence, damages may then be awarded to the employee, "even though the result be only approximate."

*Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 939 (9th Cir. 2019) (internal citations omitted) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687–88). Here, Plaintiff Sharp avers that while he was not required to keep detailed records of his time, he can estimate with reasonable precision time he spent on the job and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 21

proffers a list of projects he completed during that time. *See* ECF No. 36-6 at 4–8. Notably, Plaintiff Bean corroborates Plaintiff Sharp's estimates. ECF No. 36-1 at 2 ("[Plaintiff Sharp] usually started his day between 7 am and am and left work between 11 pm and 1 am. Sometimes he missed his lunch, sometimes he would take an hour lunch. He was constantly working on construction projects and marketing."). Accordingly, the Court finds Plaintiff Sharp has met the evidentiary threshold necessary to maintain his claim for unpaid overtime notwithstanding the absence of detailed time records.

Defendants also contend Plaintiff Sharp was an overtime-exempt managerial employee. Plaintiff Sharp testified that during his time at the Soap Lake Resort, his work consisted almost entirely of "manual labor doing construction jobs," though he did limited marketing work. ECF No. 36-6 at 4–7. As Defendants correctly point out, an employee's performing manual labor is not dispositive of their classification as an exempt executive or administrative employee. *See Black v. Colaska Inc.*, No. C07-823JLR, 2008 WL 4681567, at *8 (W.D. Wash. Oct. 20, 2008) ("[T]he fact that an employee performs substantial manual labor is irrelevant if their primary duty is the performance of [overtime-exempt] office or non-manual work . . . and whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."). Even so, viewed in the light most favorable to Plaintiff Sharp, the evidence would support a rational juror in

concluding the lion's share of Plaintiff Sharp's work was non-managerial, non-administrative construction labor, and that he was thus entitled to overtime pay. Accordingly, a genuine dispute of material fact precludes summary judgment on Plaintiff Sharp's claim for unpaid overtime.

## CONCLUSION

Though the undisputed facts demonstrate Plaintiffs have failed to state a claim for unlawful harassment or discrimination under federal or state law, there are genuine disputes of material fact on the remainder of Plaintiffs' claims. Thus the Court denies Defendants' motion for summary judgment on Plaintiffs Blair and Sharp's claims for breach of contract and willful withholding of wages, each Plaintiff's claim for wrongful termination in violation of public policy, and Plaintiff Sharp's claim for unpaid overtime.

Accordingly, **IT IS HEREBY ORDERED**:

Defendants' Motion for Summary Judgment, **ECF No. 31**, is **GRANTED IN PART** and **DENIED IN PART** as described above.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 7th day of May 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT – 23